Okay, good afternoon gentlemen. I'm Judge Dennis. I'm sitting with Judge Higginson and Judge Willett. We'll be a panel today on this case which is Stephen K. Topletz versus Jim Skinner. We'll hear first from Mr. Austin Champion. Hi, good afternoon. May it please the court. My name is Austin Champion and I represent the appellant Stephen K. Topletz. Mr. Topletz was found in contempt of a state court order and sentenced to a Collin County jail for failing to produce documents he does not possess and he cannot obtain. In the district court below, Mr. Topletz sought injunctive relief from the state court commitment order pending review of his pending petition for writ of habeas corpus. For the purpose of my argument today, I'd like to focus the discussion on the district court's determination that Mr. Topletz was unlikely to succeed on the merits of his writ or his petition for writ of habeas corpus and I'd like to specifically focus on how the court erred in its conclusion for two reasons. One, the state court commitment order violates clearly established federal law as determined by the United States Supreme Court. Two, the district court improperly engaged in extra record speculation to overcome the constitutional shortcomings or failures of the state court's contempt judgment and commitment order. The Supreme Court has said time and time again that one of the defining characteristics or goals of civil contempt is that of coercion. Civil contempt is designed to coerce a litigant to take an action as a condition to his release from confinement, but the goal of the commitment order from the state court below is quite different. The goal here is to coerce a third party to act by confining the litigant. The state court's commitment order is the quintessential abuse of contempt power and it violates well established US law as decided by the Supreme Court. By design, a civil contempt order and a judgment and commitment order must place the key to the contenders prison in his own pocket, not that of another. The Supreme Court has been singing this refrain for decades since Maggio in 1948, where it called that a decisive characteristic of civil contempt. In 1968, the Supreme Court in Shillitani recognized that a contender can be confined. I'm sorry, cannot be confined unless he alone has the ability to purge is the defining characteristic of civil contempt when we compare it to criminal contempt, which is important because criminal contempt carries with it much more heightened safeguards under due process that are not necessarily present in a civil contempt proceeding. The Maggio court went on to state too that the court in deciding whether to hold someone contempt must determine whether the contempt nor has the present ability to comply and whether jail will break a deliberate defiance. There is no dispute on the record below from the state court proceeding that Mr Toplitz does not have physical possession of the documents that he was ordered to produce as a condition of his confinement and release. The state trial court record held short of making that finding. Instead, it found that Mr Toplitz had control over certain documents pursuant to a contract. The state court even went further and said on the refused to consider Mr Toplitz is ability to obtain the documents as a factor in her decision to hold Mr Toplitz and contempt. And that's at 681 in the record where she states that is not a persuasive argument on appeal. I'm sorry on original petition. I'm sorry on an original proceeding for petition of writ of habeas at the Dallas Court of Appeals. The state appellate court concluded only that Mr Toplitz had a right to access the documents again, not finding any actual physical possession and no finding of course that Mr Toplitz had failed to request the documents from the trustee or otherwise failed to take some action that he'd been ordered to do by the state court. Notwithstanding any of the rights of the trust agreement, the fact remains that to purge contempt, Mr Toplitz here must actually obtain the documents and produce them according to the terms of the state court judge's order. He must do so despite there being no finding that he has the documents, no finding that he failed to undertake some act and was held in criminal contempt. He must do so at the pleasure of a third party, the trustee of the trust. Your honors, the inquiry ought to end here. It's well established under Supreme Court precedent that civil contempt requires the contender to carry the keys. Mr. Toplitz doesn't have the key. The difficulty here is every state court that's looked at it and quite a few have and now two federal judges have all said that he can purge himself and they've relied on various pieces of evidence that seems supported to me in the contempt hearing. The first being the prior counsel, I guess his name's Urbach, stated that he could produce and would produce it. You're familiar with that and then the second that the trust agreement itself does not have a contractual impediment and when I think your client was asked, he couldn't point to one and then the additional sort of fact relied on, it seems to me supportively, is that he didn't even try to get the financial statements. You put those three together and it seems like there's a factual basis for the consensus of courts that have looked at this record to say he never tried, his prior lawyer said he could and he didn't. You've raised three very good questions. Let me take them in turn and I hope I took good enough notes to follow, but first was the issue of the email or the promise by prior counsel to produce documents. When you look at the record, the record that was before the state court, there was no promise to produce anything beyond Mr. Toplitz's personal tax returns and the trust document. That's what the record reflects. Now, Mr. Toplitz did in fact produce his The court below specifically says on the record that she was told by him he would produce it. Your honor, there is no order though compelling Mr. Toplitz to produce trust tax returns, so he cannot be found in contempt without defiance of a court order and so here, because the most evidence that the state court had before it was an allegation of a promise, we don't have a violation of an order and we know that because we can look at the court's order and it specifically enumerates certain document requests that it contends he failed to produce and we can look to the document requests in the record and none of it requires him to produce trust tax returns. Now you asked me about contractual impediments to producing the documents. I think that's a red herring judge and here's why the fact is whether or not he has a right legal contractual or otherwise does not necessarily mean he can actually perform. We all have rights to certain things, but it doesn't follow that we have it within our own power to achieve those things or to make them happen and this is one example of that. We have in the record before the court evidence that he requested every one of the categories of documents that he'd been ordered to produce by the trial court below and we have in the record before the state court, a response from the trustee saying no, that's what we have before the court and the court was obligated to make a determination that he had it power to comply at the moment of contempt and free himself and the court didn't. You also talked about the lack of requesting or the failure. I'm sorry to request financial documents, which was also a misstep. I believe made by the courts below and reviewing the record when you go back and you look at the order that was compelling Mr. Toplets to produce documents from 2018 in the state court. There's never an order compelling him to produce trust financial instruments, profit and loss statements and balance sheets. That was never before him. There was never ordered to produce it and when he got to the hearing on contempt, it was the first time that he'd ever been notified that the court believed he had failed to produce some document relating to a trust and so the answer to the question, why did he fail to go request those those documents and specifically because he was never ordered to produce them to use that as evidence after the fact to suggest that he had somehow engaged in trickery to avoid compliance with the court's order, I think is improper. I think we have to look at what he's ordered to do and we have to look at what he did and here he was ordered to produce certain business related instruments. He did and then he informed everyone involved that he had no further documents and that was the extent of it and as I said, I think that ends the inquiry. I think that's it. Once we acknowledge that the state court contempt judgment requires a third party to engage in certain conduct, we can't go further because the Supreme Court has made it quite clear that that's not a civil contempt. Now, I want to move to a second attorney. Am I remembering Hershey or something? I believe you're right. There's been, I believe a total of three attorneys representing Mr. Toplitz over the last 8 or 9 years and at the motion to compel hearing, did Mr. Hershey also say that they would get the requested documents but subject to a protective order again. I think we have to look very closely at the record never once did Mr. Hershey I believe stayed on the record that he would produce trust related documents subject to a protective order. He said he would produce a trust instrument subject to a protective order because a trust instrument had certain confidentiality provisions and it was important that he not violate those provisions. He then did that and then upon entry of the protective order, he also produced Mr. Toplitz's personal tax returns as he had been ordered to do. Mr. Toplitz fully complied with the order by producing everything he could produce within his possession. He did not have these trust documents. He does not have them today. He cannot produce them. Now, to overcome this problem, the district court below want to speculate about what Mr. Toplitz might do based on a reading of the commitment order that was never advanced in any state court proceeding below and I believe that was improper. It was improper because one, the commitment order itself does not say that Mr. Toplitz may serve or produce proper responses. This is the safety valve theory that the sheriff's council has advanced in the briefing. That's not in the commitment order. The commitment order is very clear. It says produce the documents on the document identified as exhibit A and then you get out of jail and then you go to exhibit A and it's a form commitment order that was produced to the court by a judgment creditor at the contempt hearing that the judge attached to the back of her reference to what categories of documents must be produced to purge contempt and that's it. Nothing more. At no point at any stage of this proceeding until the district court below as anyone ever suggested that some additional response would would free Mr. Toplitz from jail and I think the illustration of that is what's the response our district court guessed. Maybe we sue him. Maybe we go back to the court and say we tried. How do we know what we can do to purge contempt when the alleged or purported purging clauses come back and provide a proper response to a document request at the hearing to avoid all doubt. Mr. Toplitz testified under oath. I do not have these documents. That's the response. They do not exist in my possession. I cannot obtain them. I can't give them to you. There is no further response that he can offer that would change this and so for that reason, I believe it was improper for the court to engage in the speculation as to what Mr. Toplitz might be able to do that might purge contempt and the reason is because the Supreme Court has established time and time again that the key must be definite. We don't put a puzzle in the contender's pocket. We put a key and if he doesn't have the key, then it's not civil contempt and it's law that civil contempt cannot be used to compel production of documents that have been given to a third party. No, I'm saying that in the context of a civil contempt proceeding, the Supreme Court established law on the issue says that the contender must possess it within his power to purge contempt. That's that was why in a simple sense, is it wrong for the lower courts to to have said, well, we know he had the power to do it because at least one, maybe two attorneys said he could. The court didn't and when we look at the trust agreement, it doesn't on its face say that he can't. Why isn't just that simple constellation enough? Well, for one, the lower court didn't say he had it within his power. The lower court, the state trial court simply said he had some legal right to obtain the documents and I think that's very different from saying he has it in his power to produce them. We know this because he asked for him and he was told no and so that can't be the solution. It can't be the solution that because one court said he has rights to them pursuant to a contract that he necessarily can possess the key to his prison. I just this is a record question. Were there hearings in front of the magistrate in the district court in federal court? There were hearings in front of the magistrate but not the district court judge. I couldn't find those transcripts. There were no transcripts. There was no at this stage was whether or not the contempt judgment was void or violated. Uh, Mr Toplitz is constitutional rights, so no additional evidence was offered at that stage of the proceeding. And it was requested. All right. Thank you. Any other questions from the court? I see I've got just under a minute. I'll yield my time and reserve everything else for rebuttal. Thank you. Thank you. Uh, Mr. I'm sorry. Mr Skinner. Yes, sir. I'm Chris Barnes. I represent. I'm sorry. I represent Sheriff Skinner. Thank you. A few things on the it's true that the December five commitment and no other commitment talks about the proper responses, but the contempt judgment itself at the record 35 to 40 talks about it. So that's been in the case. Forever. Secondly, at the June 25 2018 hearing on the plaintiff's motion to contempt, Mr Toplitz raised the argument that the plaintiff's discovery was not aimed at the trust. He said, in fact, the RFPs did not even have the trust concept in them. And a record 5 47 trial court said said, OK, so they're asking for the trust documents. So that's at June 25 2018 by the contempt hearing on March. What was it? 18 2019. Mr Toplitz still hadn't produced the records, but he was told that the discovery was aimed at the trust. The key to the impossibility question and Mr Toplitz's key process is that it's impossible for him to comply. I think the key ruling is a ruling of state law that as a beneficiary, he in fact has enough rights. I think this court should defer to that. Secondly, possession, custody or control is the standard for discovery in both federal court under Rule 34 A and in Texas court under Rule 192.3 B. And the question on control here is again a question of state law and the rules do not violate due process or can order you to exercise your rights that you have, including under the rules. Third, the sheriff supplemented the record after it was accepted on appeal, and that's the new parts are at 13 33 to 15 47. And those include the sheriff's motion for to dismiss or for summary judgment in the trial court or in the district court here. In Mr Toplitz's response, he included letters from data January and February 2020, where Mr Toplitz again wrote to the trustee asking for documents responsive to the six categories that are listed in the contempt judgment. And at ROA 1460 to 1462, the trustee writes back and says the trust has documents that are responsive to two of the six categories. The trust does not have documents responsive to three of the six and the trust trustee objects to the six category. I would submit the record shows it is not possible for the for Mr Toplitz to comply. Toplitz was under oath. He was under oath at the contempt hearing, right? At the June 25 2018 one? Uh, I guess I thought the contempt here was in March, but maybe you're right. The first contempt here. I'm sorry. I'm confusing the motion to compel here under the contempt hearing. I think he was yesterday. Did he ever contradict trust council statement that that he can't actually obtain these documents? I think he said he did not have the documents in his possession. And I'll apologize. Obviously, I'm not involved in the underlying state court suit, so I don't know the discovery history as well. But I think Mr Toplitz testified that he didn't have them in his possession and he had asked the trustee and the trustee hadn't produced them. So what I'm pointing to now in the supplemental record of 1460 to 62 are letters that were written in January and February of 2020, where the trustee then gives responsive answers about 60 categories, or one of those is an objection. Next, I think we have to look at the definition of impossibility, right? The federal case of Shillitani is the case where the goes too far once it keeps a man in prison or witnesses in prison who can no longer testify before the grand juries because they're finally discharged. Well, that's true impossibility here. Mr Toplitz not only has only written letters to the trustee, but he's left, which is significant for due process analysis, two pieces of pieces of procedural process that state law gave him the whole time. And one is a application for an injunction under Chapter 65 of the Civil Practice Memories Code. I think it would be hard to turn Mr Toplitz's barrier to use two available procedures into a due process deficiency in the contempt judge. Right? The normal petitioner before you or due process claimant is saying in procedural due process, I didn't get the counsel or adequate notice. Here, Mr Toplitz left two procedures on the table. Now, as far as substantive due process, since Mr Toplitz is challenging a state court action versus, say, an executive action or legislative, the test is whether the district court or the state trial court acted arbitrarily or capriciously. And here, the discovery followed the typical pattern, right? The plaintiff is trying to collect on a or a million-dollar judgment against Mr Toplitz. He asks for trust financial information and the trust that Mr Toplitz admits he's a beneficiary. The plaintiff moves to compel. The state trial court has a hearing. The plaintiff moves, you know, for contempt. Court holds a hearing. It's the normal pattern. It's the same kind of compulsion used in Penfield and in substantive due process violation here either. Now, I'm not sure where we are on the sufficiency challenge. There is a sufficiency challenge in Mr Toplitz's federal petition. I don't, he repeats some sufficiency arguments in the, his interlocutory appeal, although he doesn't list it as an issue. But I don't think he, Toplitz exhausted a sufficiency claim that's tied to the due process clause before either the appeals or the Texas Supreme Court. Secondly, I think the due process clause does not require a particular standard of proof in the civil context. There are the cases of Rizzo, 539 F2nd, 458 of 465, Hornbeck Offshore, 713 F13, 787, 789, 792. But those cases address a U.S. district court sitting in civil contempt in the first instance and said that those courts must find civil contempt by clear and convincing. But they were not saying that the federal due process clause requires all courts everywhere to find civil contempt by clear and convincing evidence. Secondly, although Mr. Toplitz argues that the record doesn't support the trial court's finding, he calls it a finding that he has the power. Number one, if you look at his particular complaints, they're all complaints about state law. For example, did, was he ordered to produce, you know, tax returns only or was it trust tax returns? Or what is the meaning of the Ian Ray Coons case, which is about access under Texas law? They're all questions of Texas law. They're not questions of the U.S. Supreme Court. Talked about in Wilson versus Corcoran, 562 U.S. 1. A 2252 D2 challenge, a sufficiency challenge, must still be tied to a violation of federal law. In all of Mr. Toplitz's complaints on sufficiency, even in his brief on interlocutory appeal or under state law. And lastly, I would, on sufficiency, I would say the state court's ruling that Mr. Toplitz has access isn't, is not a simple fact finding. It's a, it's an application of state law to the relevant facts and those facts are more than supported by any measure of evidence. The facts are the plaintiff is seeking discovery about a trust. There is a trust. Mr. Toplitz is a beneficiary of the trust. The trust agreement contains a paragraph 4.12 like it's set out in either page 10 of Mr. Toplitz's brief on appeal or the contempt judgment. So all those facts are supported by any standard and the judge got it right. It's an application of state law to those facts. The state court's decision that Mr. Toplitz has adequate control within the meaning of you know, the state discovery rules is not a simple fact finding in and of itself. One question, if it were though, you haven't spoken about prior counsel. What is the story about prior counsel and representations they've made? I read it like you read it, which is I thought the prior counsel had said he would produce the tax returns, but I will admit that I wasn't involved in that portion and I've been much more focused on what I thought were just the basic due process questions. So I don't know the nitty-gritty. I will refer the court though to the transcript of the June 25, 2018 hearing where that was the question of whether the discovery was aimed at the trust came up. I interpreted that he had said that, but I agree also, I'll acknowledge that it doesn't say trust in some of you know, in the earlier order compelling Mr. Toplitz, but I don't think that's, I don't see how that ties to Mr. Toplitz's due process claim. His due process claim is that he does not possess the documents. Not that there is a separate defect in the order. He's raised what he's calling defects in various sentences and part of the frustration here is that he didn't follow the, you know, the rules governing 2254 cases on how to set out his claim and I feel like they're a moving target, but so I don't, so that's the last part of my answer to you, your honor. Whatever the prior counsel said, any defect is not tied to Mr. Toplitz's claim, which is I don't possess the documents. When was the judgment that is being tried to be collected on? I think it's a final judgment. I think he's in the process. When was the original judgment? I don't know, your honor. I mean, it must be before June 2018, but I'm not, I don't know. Just wondering how long these collection efforts have been going on? Yes, sir. Yeah, all right. Right, obviously I come in once he's in our jail. We get served, so. Okay, thank you. I apologize. I, some of the, you know, some of the things that the counsel who worked on the case would know, I just didn't know. Okay, great. I'm happy to answer any other questions, otherwise I'll turn my time back. Hey, Mr. Champion, you have five minutes on the phone. Thank you. Hey, Mr. Champion, before you get started, let me ask you this. Mr. Barnes says your client did not exhaust his sufficiency claim in the Texas courts, you know, 2254 B1 requires exhaustion. Mr. Barnes said your client fell short of that. How do you respond? I think that's incorrect. Mr. Toplitz raised with the Texas Supreme Court in an original proceeding, petition for writ of habeas corpus, the issue that there was insufficient evidence to suggest or find that he had possession of the documents as was necessary to support a judgment for contempt. Keep in mind, too, coming out of the Texas State Court here, we don't have appellate rights for these judgments of contempt. And so the notion of exhaustion is a little different. All we can do is collaterally attack the judgments as void in Texas. And so, yes, that issue was raised, that issue was raised and briefed. Of course, the Supreme Court of Texas denied the request for a review, and here we are. So I think that was, in fact, preserved or raised or exhausted, whatever the right terminology would be. I want to turn to a statement that Mr. Barnes made about the use of subpoena power. Let me make something very clear. This is a post-judgment discovery case, and in Texas, the post-judgment debtor has no subpoena power. All of the discovery tools are available to the creditor, but the debtor, Mr. Toplitz's hands are tied when it comes to using discovery. So there is no right or power by Mr. Toplitz to go out and get these documents from the trustee, but let's make no mistake about it. There's nothing preventing the judgment creditor from serving a lawful subpoena on the trustee for these documents. And if the trustee doesn't comply, the judge has it within her power to hold the trustee in contempt of court. That's the process that ought to be used here. We ought not to be sitting here trying to fit around a peg in a square hole here. What we really ought to do is acknowledge the fact that Mr. Toplitz has no business being thrown in jail to make a third party do something when the state rules in Texas give the judgment creditor exactly what he needs to accomplish his ends. And that's the problem we have here. There's also a note by Mr. Barnes here that the order on the motion to compel, there's discussion on the record about how this relates to the trust. We don't get to go to the record. We don't get to look and see what people talked about. We look at the order. And the trial court order from the motion to compel that was in June of 2018 says what it says. And when you look at the order, the order says produce documents responsive to these requests. And that's it. And we have to look at that to determine whether Mr. Toplitz then failed to comply such that the trial court could then coercively confine him until he complied. And so without that order, without that commandment to go do something to produce something that is trust related, he can't have not complied and he can't be coercively confined. Uh, Mr. Higginson, you asked something about whether Toplitz testified that he couldn't get documents, Mr. Justice. Sorry. Um, and the answer is yes. Under oath, he testified that he had attempted to obtain the documents from the trustee and he was denied. And so under oath, the only evidence before because there was no controverting evidence. There's no controverting evidence other than the legal document that says what it says. The only evidence was he could not obtain the documents. He did not possess the documents he had searched for the documents produced everything he had. And that's what got us here is that notwithstanding that testimony that was uncontroverted, the trial court below in the state court proceeding said he had to. He had to make it happen. And I think that's an improper use or an contempt power. I think the final issue raised by Mr Barnes that I'll touch on is this proper responses language in the contempt judgment. The reason that's not really an issue here is that we're talking about the commitment order. That's the order from the trial court that commands Mr Barnes client, the sheriff of Collin County to confine Mr Toplitz. That's the order we have to look at for purposes of this petition is is the order that says hold this man until thing happens. And the order says on its face, hold him until he produces documents. And that ought to end the inquiry. So judges here we have a pretty simple dilemma. The only record evidence is he doesn't have the documents. It's been 18 months since this was originally or since he was originally found in contempt of court. As Mr Barnes pointed out, he's repeatedly tried to get the documents even after the original contempt proceeding, and he's been denied. So we either leave him in jail and we say, Sorry, um, looks like we found a loophole or we do the right thing. And we say the Constitution affords you certain protections. And so I asked the court to vacate the district court's decision denying the preliminary injunction. Let this man stay free until we fully resolve this issue. The district court below. Thank you. I think I'm out of time. I'm sorry. I should have said something. Yeah. All right. This case is submitted. We'll call the final case for today.